## Breintall's Estate

Before Van Dusen, Stearne, Klein, and Bok, JJ.

*Lewis H. Van Dusen, Jr.*, and *Charles J. Biddle*, of *Drinker, Biddle & Reath*, for ancillary administrator.

*John C. Gilpin*, of *Gilfillan, Gilpin & Brehman*, for executors.

STEARNE, J., June 12, 1936.—An ancillary administrator cum testamento annexo petitions for an order upon the executors of the domicile to pay over to it certain

alleged assets of the decedent which are claimed by the petitioner to be within this jurisdiction, to which petition an answer has been filed. The domiciliary executors seek, by answer filed, to have dissolved a restraining order which prohibits distribution of assets within this Commonwealth.

From the petitions and answers and the agreed stipulation of facts it appears that the decedent, a resident of New Jersey, died testate, on August 31, 1927. The will was duly probated in the State of New Jersey, and letters testamentary thereon were issued to a trust company and an individual, the executors therein named. The trust company is a Pennsylvania corporation doing business in the City of Philadelphia. The individual executor is a resident of this Commonwealth. Upon their appointment, the executors duly filed, in the State of New Jersey, an inventory and appraisement of the personal property of the decedent. They also proceeded, in the administration of the estate, to sell the real estate of decedent. Three parcels of such real estate were located in the City of Philadelphia, State of Pennsylvania. In 1928 the domiciliary executors sold premises at Eleventh and Chestnut Streets, and in 1929 premises Twelfth and Sansom Streets. The third parcel of real estate, located at Thirteenth and Arch Streets, was sold at public auction by such executors on December 31, 1935, settlement made therefor, and deed duly given and recorded to the purchaser.

The stipulation of fact discloses that the domiciliary executors accounted for their administration of the estate in the Orphans' Court of Atlantic County, State of New Jersey, and have distributed, and are still distributing, said assets in accordance with the orders and decrees of the New Jersey courts. While a detailed statement of the testamentary provisions seems unnecessary, it may be recited that, after certain legacies, the residue is held in trust for the benefit of certain annuitants and life tenants, with remainders over to individuals and chari-

ties. The legacies were awarded and paid, under decree of New Jersey courts, but the annuity and life tenants' payments are being presently withheld because of the restraining order of this court.

An examination of the record discloses that the ancillary administrator c. t. a. was appointed by the register on February 28, 1936, at the nomination of the mortgagee of the Thirteenth and Arch Streets real estate, as an alleged creditor of decedent. At the argument it was represented that the mortgagee is the only Pennsylvania creditor. It is thus obvious that the chief actor in these proceedings is this creditor. However, the creditor was quiescent from the date of decedent's death on August 31, 1927, until February 8, 1936, when it caused the ancillary administrator to be appointed. Such mortgagee creditor permitted all of the Pennsylvania real estate to be sold and took no steps whatsoever to extend its lien to the other Pennsylvania real estate of the decedent. Because no steps have been taken to foreclose the mortgage, it may well be that, under the provisions of the Deficiency Judgment Act of July 1, 1935, P. L. 503, ultimately such mortgagee will not be regarded as a creditor. However, this situation is not presently before us. To test the status of this alleged creditor, if such proceeding be required, the ancillary administrator should file an account, even though it contains no items of charge and disbursement, and then such question may be determined by an auditing judge.

The administrator c. t. a., upon its appointment, made immediate demand upon the executors to turn over to it all of decedent's property which was in Pennsylvania at the time of the death, or to account to such administrator for the disposition of such property. In particular the petitioner claimed, for the use of the resident creditors, the Pennsylvania real estate or the proceeds thereof hereinbefore referred to. The legal principle upon which petitioner relies is that the will, under its terms, works an equitable conversion, and that, therefore, at law,

such real estate is to be regarded as personal property, and as such is liable first for the payment of debts of resident creditors.

The right to ancillary letters is regulated by section 2(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, following section 6 of the Act of March 15, 1832, P. L. 135, and, as was said in Sayre's Execs. v. Helme's Execs., 61 Pa. 299, was designed to prevent "executors or administrators authorized by a foreign jurisdiction, to collect and carry away the assets of a foreign decedent's estate, and compel domestic claimants to follow them." But, even where an ancillary administrator collects such assets within this jurisdiction it is within the discretion of the auditing judge whether he will distribute the fund or remit it to the domicile: Bertin's Estate, 245 Pa. 256; Middleby's Estate, 249 Pa. 203; Easby's Estate, 285 Pa. 60.

So far as real estate is concerned, the practice as to sale thereof by the executor or trustee of a nonresident testator is prescribed by section 59(d) of the Fiduciaries Act of 1917.

Petitioner's demand is predicated upon the theory that the direction in the will to the executors to sell the real estate worked an equitable conversion and that, therefore, such real estate, or its proceeds, is to be regarded as personal property in this State in the hands of the domiciliary fiduciaries and must be delivered to the ancillary administrator c. t. a., for the benefit of Pennsylvania claimants.

We pass for the moment the initial question whether the legal fiction of equitable conversion may be applied in this Commonwealth through a will of a nonresident decedent: Paul's Estate, 14 D. & C. 251, affirmed in 303 Pa. 330. But the controlling fact is that the executors of the domicile actually sold the real estate, obtained the proceeds thereof, accounted for them in the court of the domicile, and have since made distribution in accordance with the decree of the New Jersey court.

True, assets may still be in the fiduciaries' hands and in this jurisdiction, but they are being administered in accordance with the New Jersey decrees. In the excellent brief of counsel for petitioner, New Jersey statutes are cited concerning procedure in estate settlements, but the laws of another State or country are matters of fact and must be proved as such, and in the absence of such proof they will be presumed to be the same as the law of Pennsylvania: Bennett et al. v. Cadwell's Exec., 70 Pa. 253; Cabarga v. Seeger, 17 Pa. 514, 520; Evans v. Cleary, 125 Pa. 204, 211; Van Auken v. Dunning, 81 Pa. 464, 467; Musser v. Stauffer, 178 Pa. 99, 105; Linton v. Moorhead, 209 Pa. 646, 649; Bayuk Bros., Inc., v. Wilson Martin Co., 81 Pa. Superior Ct. 195, 197; Semple v. Kramer et ux., 83 Pa. Superior Ct. 161, 163. There was no proof or stipulation as to New Jersey law, and therefore we must assume that upon an accounting the court directed distribution in accordance with the will, as is done in this jurisdiction. Distribution from executors to trustees is actual distribution although they be the same persons: Mack's Estate, 111 Pa. Superior Ct. 20. Brooks' Execs. v. Litchfield et al., 19 Dist. R. 40, cited by counsel for petitioner, is readily distinguishable. Indeed, if it were not, we would not be bound thereby. In that case the domiciliary fiduciary sold real estate and took back a purchase-money mortgage, which he started to foreclose. The ancillary administrator caused the writ to be quashed and retook the mortgage for the benefit of resident claimants. It is to be noted that there had been no prior accounting and awards in the domicile, as appears here. Herein lies the distinction.

While an ancillary administrator c. t. a. may be entitled to any unadministered assets within this jurisdiction, yet where there are none there is nothing for the fiduciaries of the domicile to deliver. Because it clearly appears that no unadministered assets, either real or personal, are within this Commonwealth, there is no

basis for the present application, and the petition is dismissed.

As respects the injunction of February 28, 1936, wherein the executors of the domicile are restrained from further proceeding with the distribution of the estate within this Commonwealth, we are of opinion, for the above reasons, that such order should now be dissolved. There are no unadministered assets within this jurisdiction, and the Orphans' Court of Philadelphia County is without power to restrain the fiduciaries of the domicile from administering and distributing the estate where this is being done under the express direction and authority of the courts of the State of New Jersey. The decree of February 28, 1936, is hereby rescinded and vacated.